No. 1-19-2428WC

2020 IL App (1st) 192428WC-U

Workers' Compensation
Commission Division
Order Filed: October 23, 2020

No. 1-19-2428WC

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| CRAIG MARKIEWICZ, | ) | Appeal from the |
| | ) | Circuit Court of |
| Appellant, | ) | Cook County |
| | ) | |
| v. | ) | Nos. 18 L 050550 |
| | ) | |
| | ) | |
| THE ILLINOIS WORKERS' COMPENSATION | ) | |
| COMMISSION *et al.*, | ) | Honorable |
| | ) | Daniel P. Duffy, |
| (McHugh Construction, Appellee). | ) | Judge, Presiding. |

JUSTICE HOFFMAN delivered the judgment of the court.
Presiding Justice Holdridge and Justices Hudson, Cavanagh, and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held:*  We: 1) reversed that portion of the circuit court's judgment that confirmed the portions of the Commission's decision vacating the maintenance benefits awarded to the claimant, reducing the claimant's TTD benefits from 59 3/7 weeks of benefits to 56 4/7 weeks of benefits, and vacating the order upon McHugh to pay Grzesik

- 1 -

$2,000; 2) vacated that portion of the circuit court's judgment that confirmed the Commission's denial of penalties under sections 19(k) and 19(*l*) of the Act and attorney fees under section 16 of the Act; 3) affirmed the circuit court's judgment in all other respects; 4) reversed those portions of the Commission's decision vacating the maintenance benefits awarded to the claimant, reducing the claimant's TTD benefits from 59 3/7 weeks of benefits to 56 4/7 weeks of benefits, and vacating the order upon McHugh to pay Grzesik $2,000; 5) vacated that portion of the Commission's decision denying the claimant penalties under sections 19(k) and 19(*l*) of the Act and attorney fees under section 16 of the Act; and 6) remanded this cause to the Commission with directions to: a) award the claimant 59 3/7 weeks TTD benefits for the period of December 19, 2011, through January 31, 2013; b) award the claimant 125 4/7 weeks of maintenance benefits for the period from February 1, 2013, through June 30, 2015; c) order McHugh to pay $2,000 to Thomas Grzesik; and d) conduct a hearing, consistent with the opinions expressed herein, to determine whether the claimant is entitled to penalties under sections 19(k) and 19(*l*) of the Act and attorney fees under section 16 of the Act.

¶ 2    The claimant, Craig Markiewicz, appeals from an order of the circuit court, confirming a decision of the Illinois Workers' Compensation Commission (Commission) which modified the decision of an arbitrator that awarded him certain benefits under the the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2010)) for injuries to his left knee which he sustained on December 16, 2011, while wording for McHugh Construction Company (McHugh).    For the reasons which follow, we: affirm the circuit court's order in part; reverse the circuit court's order in part; vacate the circuit court's order in part; reverse the Commission's decision in part; vacate the Commission's decision in part; and remand this matter to the Commission with directions.

¶ 3    The following recitation of the facts relevant to a disposition of this appeal is taken from the evidence adduced at the arbitration hearing held on January 19, 2016.

¶ 4    The claimant was a journeyman ironworker who had been employed by McHugh off and on for approximately 10 years. On December 16, 2011, the claimant was working for McHugh as a rodbuster on a reconstruction project on lower Wacker Drive in Chicago. His duties included installing rebar, wire mesh, and post tension cables. As he was walking to his work position on a

freshly installed slab covered completely with concrete, the claimant stepped onto an unmarked area for a manhole cover, causing him to step into a hole and twist his left knee. The claimant testified that he experienced immediate pain but, nevertheless, finished working that day. The accident took place on a Friday.

¶ 5     On the following Monday, December 19, 2011, the claimant reported to work and told his supervisor that his knee was not better and that he needed medical care. McHugh sent the claimant to the Northwestern Corporate Health facility where he was seen by Dr. Milton. The claimant was given crutches and a knee immobilizer, released to light duty work, and told to undergo an MRI. The claimant testified that Dr. Milton referred him to Dr. Stephen Gryzlo.

¶ 6     The claimant had the recommended MRI at Advantage MRI on December 23, 2011. Rather than see Dr. Gryzlo, the claimant had a follow-up appointment with Dr. Eugene Lopez on December 27, 2011. On that date, Dr. Lopez diagnosed the claimant as suffering from a meniscal tear. He prescribed physical therapy and authorized the claimant to remain off of work.

¶ 7     The claimant began physical therapy at ATI on December 29, 2011. On January 13, 2012, the claimant returned to see Dr. Lopez, who reviewed the MRI of the claimant's left knee, administered a steroid injection, and authorized the claimant to remain off of work. According to the claimant, he received no relief from the injection.

¶ 8     The claimant next saw Dr. Lopez on February 9, 2012. Dr. Lopez administered the first of a series of five Supartz injections into the claimant's left knee. The claimant testified that his symptoms did not improve with the injections, the last of which was administered on April 11, 2012.

¶ 9     At the request of McHugh, the claimant was evaluated by Dr. Mark Levin on February 20,

2012. According to the claimant, Dr. Lavin recommended that he undergo an exploratory arthroscopy of his left knee. He testified that Dr. Levin stated that his condition was causally related to his accident and he required surgery. The claimant stated that Dr. Lopez was not in agreement with Dr. Levin's recommendation for surgery.

¶ 10    The claimant continued in physical therapy until April 27, 2012. Desirous of a second opinion, the claimant presented to Dr. Gryzlo on May 3, 2012. The claimant testified that Dr. Gryzlo examined him, took x-rays, recommended a repeat MRI followed by surgery, and authorized him to remain off of work. Dr. Gryzlo testified that he recommended surgery as all conservative treatment had failed.

¶ 11    On June 22, 2012, Dr. Gryzlo operated on the claimant's left knee at Northwestern Memorial Hospital. The operation consisted of a partial medial meniscectomy, debridement of the patella femoral chondromalacia, and debridement of an ACL ganglion cyst. Dr. Gryzlo testified that he removed the meniscus because it could not be repaired. He opined that the meniscal tear in the claimant's left knee was caused by his work accident and that both the surgery and the claimant's post-operative care are causally related to that accident.

¶ 12    The claimant continued to treat with Dr. Gryzlo post-operatively. He also underwent physical therapy at ATI from July 3, 2012, through August 28, 2012, followed by work hardening beginning on September 4, 2012. On September 27, 2012, Dr. Gryzlo released the claimant to return to work at a medium demand physical level, with no lifting over 50 pounds, and he recommended that the claimant undergo vocational retraining.

¶ 13    According to the claimant, McHugh ceased paying TTD benefits on October 4, 2012.

¶ 14    The claimant testified that, on October 5, 2012, he received an offer from McHugh of light

duty work. The offer came in the form of an attachment to an e-mail to his attorney. In relevant part, the written job offer states:

> "After reviewing information provided to us dated September 27, 2012 by examining doctor, Dr. Gryzlo, this will confirm we are offering the following medically modified work assignment.
>
> Your most recent work restrictions provided to us indicate that Dr. Gryzlo states that you are able to lift up to 50 pounds, within a medium level work duty. This assignment is within medically modified abilities described as safe for you to perform by the examining doctor. The duration of these modifications and this work offer will follow future changes to medical modifications.
>
> You will only be assigned to tasks consistent with this Dr. Gryzlo's work restriction recommendations. If you feel you have been given tasks to perform in excess of the medical modifications, this will confirm you are not to attempt or perform such tasks but call or see the undersigned at your earliest opportunity.
>
>                           ***
>
> Job Title: Ironworker
> Description of physical requirements for this medically modified position:
> Within the restrictions described above."

On October 12, 2012, claimant's attorney forwarded a letter to McHugh's workers' compensation insurance carrier in which he advised the carrier that the claimant was attending work hardening five days each week from 7:30 a.m. until 12:30 p.m. and that McHugh's offer of employment overlaps those hours. The letter goes on to state that the claimant will not return to work until he is in receipt of a job description of the work he will be doing and that, in the absence of a detailed job description, the claimant would be unable to respond to the job offer.

¶ 15    On October 22, 2012, the claimant had a functional capacity evaluation (FCE) at ATI. The report of that evaluation placed the claimant at a medium physical demand level with no standing more than four hours per day for a one-hour duration only, no walking more than four to five hours, and only occasional balancing, bending, stooping, climbing stairs, crouching, or squatting. The claimant testified that he gave full effort during the evaluation.

¶ 16    On January 7, 2013, McHugh's attorney forwarded a modified job description to the claimant's counsel. The document states that the job title was "IRONWORKER – (rodbuster)," with a general job description of: rigs, unloads, carries, drays, and ties reinforcing steel for concrete placement; directs operators and operates forklifts, man lifts and scissors lifts; and generally perform duties as required to satisfy the overall purpose of the job. The physical requirements set forth in the document included ability to: lift up to 50 pounds; bend over as much as four to six hours in an eight hour work day to move rebar, place rebar, and tie rebar in place with tie wire; install rebar for three to four hours in an eight hour work day; and building rebar cages.

¶ 17    The claimant testified that he took the job description to Dr. Gryzlo on January 17, 2013. According to the claimant, Dr. Gryzlo reviewed the job description and stated that he was unable to perform the modified duties. In a progress note dated that same day, Dr. Gryzlo wrote that the claimant was eight months post left knee surgery, had not progressed, and will not progress. Dr. Gryzlo found the claimant to be at maximum medical improvement (MMI) and that he will always fall into the medium physical demand level. In the progress note, Dr Gryzlo went on to state:

> "A report on a modified job description for an iron worker was given to me, which suggests climbing ladders, scaffold, carrying heavy items and climbing up a wall in rebar, to place rebar.  The modified duties make it somewhat possible for an injured worker to

get back, but his medium level duty, with pain when he bends and kneels and squats and works on beam and uneven surfaces, would be, again, jeopardized with this modified iron worker position. I therefore don't think that he can do the modified job description as described by me and brought to my viewing. I think that he can find vocational retraining, but returning to an iron worker, even on a modified level, would not be possible with his restrictions with regards to his left knee."

On January 24, 2013, a copy of Dr. Gryzlo's note was sent by the claimant's attorney to McHugh's counsel via facsimile. In that transmission, the claimant's attorney demanded that vocational rehabilitation be provided and that the claimant be brought current on maintenance benefits. The claimant testified that he rejected McHugh's modified job offer. He admitted, however, that he never attempted to perform the duties of the job that he was offered.

¶ 18    According to the claimant, he began a self-directed job search on February 1, 2013. At the arbitration hearing, the claimant identified his job logs, representing his job search efforts through the date of the arbitration hearing. The claimant stated that he had not received any offers of employment as a result of his job search.

¶ 19    On April 17, 2013, the claimant was examined by Dr. Ram Aribindi at the request of McHugh. Dr. Aribindi diagnosed the claimant as suffering from left knee anterior pain attributable to underlying degenerative arthritic changes. Dr. Aribindi testified that the claimant was restricted from climbing ladders, kneeling or squatting, and that the claimant fell into the medium physical demand level as outlined in his FCE. In the report of his examination, Dr. Aribindi opined that the claimant's restrictions were due to a longstanding arthritic condition, which predated his work accident. He did admit that the claimant's work accident was a causative factor in the onset of left

knee pain, and that the work accident could have aggravated the claimant's underlying arthritic condition. Dr. Aribindi testified that the claimant had reached MMI, that he could not perform his regular job duties, and that the claimant would not be able to squat or go up and down stairs. He attributed the claimant's physical limitations to "his underlying arthritis." According to Dr. Aribindi, all of the claimant's medical care was reasonable and necessary.

¶ 20    On June 20, 2013, the claimant next saw Dr. Gryzlo for a post-operative follow-up visit. Dr. Gryzlo testified that the claimant's medium physical demand work level restriction is permanent, and he again opined that the claimant could not return to work as an iron worker but could work at a medium physical demand level or less. He stated that he could not release the claimant to return to ironwork based upon what the claimant could only do occasionally.

¶ 21    On September 5, 2013, the claimant enrolled at the CDL Mega Driving School (MEGA) in an effort to obtain a Class A truck driving license. The claimant testified that he was offered the training by McHugh and that McHugh paid the fees for a commercial driving license (CDL) permit. According to the claimant, he did not undergo a vocational assessment before starting the CDL program, nor did he receive any opinion from a vocational counselor stating that truck driving was suitable employment for him. The program consisted of 40 hours of classroom instruction and behind the wheel training. The claimant was also required to have a physical examination to determine his ability to drive. On September 17, 2013, the claimant underwent a physical examination by Dr. Simon who did not clear him to drive but, instead, ordered that he undergo an SPE before he was cleared to drive. According to the claimant, the SPE is a test to determine if he could physically drive a truck safely. The test required him to climb into the cab of a truck, climb up into the engine compartment, climb on the truck to connect air lines, crawl under the truck to

check the brakes, squat to check tire pressure, and climb onto a trailer to secure a load with straps. He stated that successful completion of the SPE was necessary to complete the qualification for a DOT physical. The SPE test required the use of a semi-trailer Class A truck, which MEGA did not provide. Through his attorney, the claimant requested both authorization for the SPE test and that McHugh provide a truck to complete the test. Those requests were made on six occasions, but McHugh never authorized the test, nor did it provide the required truck. The claimant testified that, because he was unable to take the SPE test, he did not complete the CDL course. He stated that McHugh paid maintenance benefits beginning on September 5, 2013, the day that he began the CDL course, but terminated maintenance on June 3, 2014, when he failed to complete the course.

¶ 22    At the request of his attorney, the claimant underwent a vocational assessment conducted by Thomas Grzesik, a certified rehabilitation counselor. Grzesik interviewed the claimant on October 30, 2014. In his report of that assessment dated January 19, 2015, Grzesik enumerated the documents that he reviewed and set forth the claimant's biographical data, which included the fact that, in 1994, the claimant earned a B.S. degree in Health Science – Occupational Safety from Illinois State University. He also set forth other information relating to the claimant's medical treatment, his current activities, social activities, hobbies, work history, and physical capabilities. The report sets forth the vocational tests that Grzesik administered and the claimant's results. In that report, Grzesik opined as follows: the claimant is unable to perform the duties of a journeyman ironworker; his B.S. degree in Health Science "has very little to no efficacy with respect to employment;" commercial truck driving is not suitable employment for the claimant; the claimant's self-directed job search was diligent but unsuccessful; the claimant meets the criteria for vocational rehabilitation; and that, based upon his vocational profile, the claimant is currently

limited to entry level unskilled or semi-skilled occupations. Grzesik then listed 15 examples of entry level unskilled or semi-skilled occupations; he testified that the claimant considered some of those jobs. When deposed, Grzesik testified that the claimant met the need for vocational rehabilitation and again opined that the claimant performed a diligent, but unsuccessful, job search. He admitted, however, that, when the claimant began his job search, he was looking at the high end, "not so much looking for a job but contacting employers that were advertising jobs that were outside his area." He stated that the claimant eventually pared back his search to positions "that were more specific to what he could do now without having to go through perhaps more screening to see if maybe he could be used, but openings that were there that he could perform now." According to Grzesik, the claimant "was diligent, he went and he looked." He testified that, if the claimant had professional assistance with his job search, "it's more likely than not he would become employed." Grzesik did not believe that the claimant was at a full medium physical demand level due to his restriction. He again stated his opinions that: the claimant is not able to return to work as an ironworker; he is not able to work as a commercial truck driver; the claimant meets the criteria for vocational rehabilitation; and the claimant's self-directed job search was diligent but unsuccessful.

¶ 23    Lawrence Kahan, a vocational rehabilitation counselor, testified that, at the request of McHugh, he prepared a report relating to the claimant dated July 13, 2015. In that report, Kahan wrote that the claimant "was offered a medically appropriate modified duty position within his physical demand capacity by McHugh Construction." According to Kahan, a truck driving position is within the claimant's medium physical demand level. The report states that the claimant is "capable of working in this capacity based on an assessment of his vocational profile and physical

capacity to perform the work". Kahan noted, however, that the claimant would be required to obtain the necessary CDL license and pass the required physical. He noted that there are 464,700 projected job openings for truck drivers for the period of 2012 through 2022, and listed 10 company contacts. When deposed, Kahan admitted that he did not evaluate the claimant face to face. He testified that he performed a labor market survey for a Class A truck driving job and that the survey was based entirely on CDL Class A truck driving jobs. According to Kahan, if the claimant failed to pass a SPE test, he would not qualify for the jobs listed in the labor market survey. Kahn stated that a truck driving job would require the claimant to: load and unload the truck; squat to inspect the tires and check tire pressure; inspect the lights, brakes, gas, oil and water; change spark plugs; and put chains on the tires. Kahan admitted that he did not perform a transferred skills analysis or a vocational assessment. Kahan also admitted that he did not review the claimant's job logs and had no opinion as to whether the claimant's job search efforts were diligent. He was uncertain as to which of Dr. Gryzlo's records he reviewed, but he denied ever seeing Dr. Gryzlo's January 17, 2013, progress note that states the claimant could not perform the job offered by McHugh. Kahan admitted that he never reviewed the job description for the position offered to the claimant by McHugh. Nevertheless, he opined that the claimant could perform the modified job offered by McHugh. Kahan testified that he did not review Dr. Aribindi's deposition testimony. After viewing the ironworker work rules, Kahan acknowledged that ironworker contract rules require members to be capable of performing 100% of their job duties and that no light duty is available in ironwork. Kahan conceded that, under the ironworker contract rules, the job offered to the claimant would not be appropriate for, or available to, him.

¶ 24      At the arbitration hearing, the claimant testified that prior to his work accident of December

16, 2011, he had never before injured his left knee, received medical care for the knee, missed work due to his left knee, or had any difficulty performing his job as an ironworker as the result of his left knee. As to his current physical symptoms, the claimant stated that he experiences constant pain in his left knee, more so when he climbs stairs and when sitting in a chair. He stated that his daily activities are limited because his left knee gets sore and stiff and that his knee is stiff when bent. The claimant testified that he had no medical appointments scheduled, although he did plan to see his doctor in the future. When questioned about several videos that depicted him working out at a gym and getting in and out of his pick-up truck, the claimant stated that he works out at a gym regularly, three to four times each week, using elliptical machines and weight lifting exercises he learned in physical therapy and work conditioning. He stated that his ongoing physical conditioning was directed by his doctor. As for the video depicting him getting in and out of his pick-up truck, the claimant explained that the truck is equipped with running boards which aid him in getting in and out of the vehicle. The claimant also testified that his union prohibits light-duty work for a journeyman ironworker, but he did not know whether McHugh was authorized to offer him work in a non-union capacity.

¶ 25    Following the arbitration hearing held on January 19, 2016, pursuant to section 19(b) of the Act (820 ILCS 305/19(b) (West 2014)), the arbitrator issued a written decision on September 12, 2017, finding that the claimant sustained an injury to his left knee on December 16, 2011, that arose out of and in the course of his employment with McHugh. The arbitrator awarded the claimant: 59 3/7 weeks of temporary total disability (TTD) benefits for the period of December 19, 2011, through January 31, 2013; 125 4/7 weeks of maintenance benefits for the period from February 1, 2013, through June 30, 2015; 86 weeks of permanent partial disability (PPD) benefits

for a 40% loss of use of the left leg; and 125 weeks of PPD benefits for a 25% loss of trade due to permanent restrictions. McHugh was ordered to pay $2,000 to the claimant's vocational expert, Thomas Grzesik, and was given a credit of $93,000 for TTD benefits paid. The arbitrator found that the claimant was not totally and permanently disabled. In addition, the arbitrator denied the claimant's request for penalties pursuant to sections 19(k) and 19(*l*) of the Act (820 ILCS 305/19(k), 19(*l*) (West 2016)) and attorney fees pursuant to section 16 of the Act (820 ILCS 305/19(16) (West 2014)). In the request for hearing form, McHugh did not dispute either accident or notice.

¶ 26     Both the claimant and McHugh filed petitions for review of the arbitrator's decision before the Commission. On August 15, 2018, the Commission issued a unanimous decision in which it modified the arbitrator's decision. Finding that McHugh offered to accommodate the claimant and provide work within his physical demand level and that the claimant made no attempt to work in the accommodated position, the Commission: awarded the claimant 56 4/7 weeks of TTD benefits for the period of December 19, 2011, through January 17, 2013; vacated the arbitrator's award of maintenance benefits; and vacated the order requiring McHugh to pay $2,000 to the claimant's vocational expert, Thomas Grzesik. The Commission also vacated the award of 86 weeks PPD benefits for a 40% loss of use of the left leg and the award of 125 weeks of PPD benefits for a 25% loss of trade due to permanent restrictions, and instead awarded the claimant 200 weeks of PPD benefits for a 40% loss of the person as a whole. In all other respects, the Commission afformed and adopted the decision of the arbitrator, including, but not limited to, the $93,000 credit granted to McHugh for TTD benefits paid and the denial of the claimant's request for penalties pursuant to sections 19(k) and 19(*l*) of the Act and attorney fees pursuant to section 16 of the Act. The

Commission did not remand the matter back to the arbitrator.

¶ 27    The claimant sought a judicial review of the Commission's decision in the circuit court of Cook County. On November 7, 2019, the circuit court confirmed the Commission's decision, and this appeal followed.

¶ 28    Again, we find it necessary to admonish a litigant for failure to comply with the requirements for briefs filed with this court. Illinois Supreme Court Rule 341(h)(7) (eff. Nov. 1, 2017) requires that the argument section of a brief contain citations to the pages in the record relied upon in support of factual contentions. The requirements set forth in Rule 341(h)(7) are applicable to appellees briefs. S. Ct. R. 341(i) (eff. May 25, 2018). In the 17-page argument section of the brief filed by McHugh, there are only 3 citations to the record and 2 citations to the arbitrator's decision supporting factual assertions. The result is that this court was required to search a 3000+ page record to determine the veracity of the factual statements made by McHugh that do not appear in the claimant's brief, which does contain record page citations. Supreme Court rules "are not suggestions;" rather, they are rules which have the force of law, and the presumption is that they will be followed as written. *Bright v. Dicke*, 166 Ill. 2d 204, 210 (1995). This court has the discretion to strike a brief for failure to comply with the rules of the supreme court. *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 77. We elect not to do so in this case and will address the issues raised on the merits.

¶ 29    We also wish to comment that, contrary to McHugh's assertion, our function is not to determine if the circuit court's decision is against the manifest weight of the evidence; rather, we review the Commission's decision to determine whether that decision is against the manifest weight of the evidence and, based on that review, either affirm or reverse the circuit court's

judgment. *Dodaro v. Illinois Workers' Compensation Comm'n*, 403 Ill. App. 3d 538, 543 (2010).

¶ 30   Before addressing the claims of error raised by the claimant in this appeal, we address the appropriate standard of review. The claimant argues that we should review the Commission's decision *de novo.* According to the claimant, the facts in this case are "essentially undisputed and the Commission's decision was based upon a misapplication of the law to those undisputed facts." McHugh argues that the appropriate standard of review is the manifest weight standard. It contends that numerous disputed issues of fact were resolved by the Commission that should be reviewed pursuant to a manifest-weight standard of review. We agree with McHugh; the appropriate standard of review in this case is manifest weight with the exception of the issues relating to the denial of penalties pursuant to section 19(k) of the Act and attorney fees pursuant to section 16 of the Act, to which we apply the abuse of discretion standard. See *McMahan v. Industrial Comm'n*, 183 Ill. 2d 499, 516 (1998)).

¶ 31   Even in cases where the facts are undisputed, this court must apply the manifest-weight standard of review if more than one reasonable inference might be drawn from the facts. *Brady v. Louis Ruffolo & Sons Construction Co.*, 143 Ill. 2d 542, 549 (1991). It is only in those cases where the undisputed facts are susceptible to a single inference that we conduct a *de novo* review. *Baumgardner v. Illinois Workers' Compensation Comm'n*, 409 Ill. App. 3d 274, 279 (2011). When, as in this case, the issues presented are addressed to the Commission's factual determinations, we apply a manifest-weight standard of review. *Orsini v. Industrial Comm'n,* 117 Ill. 2d 38, 44 (1987). Under that standard, we will not disturb the Commission's factual determinations unless an opposite conclusion is clearly apparent. *Caterpillar, Inc. v. Industrial Comm'n*, 228 Ill. App. 3d 288, 291 (1992). Whether this court might have reached the same

conclusion is not the test of whether the Commission's determination of a question of fact is supported by the manifest weight of the evidence. Rather, the appropriate test is whether there is sufficient evidence in the record to support the Commission's determination. *Benson v. Industrial Comm'n*, 91 Ill. 2d 445, 450 (1982).

¶ 32    Turning now to the substantive issues raised in this appeal, we first address the claimant's argument that the Commission erred in failing to award him permanent total disability (PTD) benefits under the odd-lot theory. He asserts that the evidence of record established that he performed a diligent, but unsuccessful, job search, and McHugh failed to meet its burden of proving both that he is employable in a stable labor market and that such a market exists. McHugh argues that the claimant failed to prove that he conducted a diligent job search and that the evidence established that the claimant is employable in a stable labor market.

¶ 33    A claimant is entitled to PTD benefits pursuant to section 8(f) of the Act (820 ILCS 305/8(f) (West 2014)) if, as the result of his work injury, he can make no contribution to the work force sufficient to earn a wage. *Lenhart v. Illinois Workers' Compensation Comm'n*, 2015 IL App (3d) 130743WC, ¶ 32. Entitlement to PTD benefits does not require that a claimant be completely physically incapacitated. *Id.* When, as in this case, the claimant's disability is limited in nature so that he is not obviously unemployable, or if there is no medical evidence to support a claim of total disability, the burden rests with the claimant to establish that he will not be regularly employed in a well-known branch of the labor market. However, once the employee has initially established that he falls in what has been termed the "odd-lot" category (one who, though not altogether incapacitated for work, is so handicapped that he will not be employed regularly in any well-known branch of the labor market), the burden shifts to the employer to prove that the claimant is

employable in a stable labor market and that such a market exists. *Valley Mold & Iron Co. v. Industrial Comm'n*, 84 Ill. 2d 538, 546-47 (1981); *Westin Hotel v. Industrial Comm'n*, 372 Ill. App. 3d 527, 544 (2007). A claimant can satisfy his burden of proving that he falls within the odd-lot category by showing either that he has made diligent but unsuccessful attempts to find work or that, because of his age, skills, training, and work history, he will not be regularly employed in a well-known branch of the labor market. *Westin Hotel*, 372 Ill. App. 3d at 544. A claimant is not entitled to PTD benefits if he is capable of obtaining gainful employment without seriously injuring his health. *Lenhart,* 2015 IL App (3d) 130743WC, ¶ 32.

¶ 34     The claimant asserts that "[t]he Commission never considered [him] *** for permanent total disability because it held that he refused [McHugh's] *** 'modified job' offer to his detriment." The Commission's decision reflects that, other than observing that the arbitrator found that the claimant was not permanently and totally disabled under an odd-lot theory, the Commission never addressed the claimant's request for an award of PTD benefits. Rather, the determination of the issue is contained within a portion of the arbitrator's decision that the Commission affirmed and adopted. The arbitrator's decision reflects that the claimant's failure to accept McHugh's job offer never entered into the analysis of his entitlement to PTD benefits. The arbitrator found that the claimant had not conducted a diligent job search and was capable of gainful employment. In her decision, the arbitrator noted that, although Grzesik opined that the claimant's job search was diligent, he admitted that, when the claimant began his job search, he was looking at the high end, "not so much looking for a job but contacting employers that were advertising jobs that were outside his area." According to Grzesik, if the claimant had professional assistance with his job search, "it's more likely than not he would become employed." The

arbitrator also noted that the claimant has a B.S. degree from Illinois State University, he is articulate and organized, and he does not suffer from a language barrier. She concluded that all of the evidence supports the fact that the claimant is capable of working at a medium physical demand level. Based upon these facts, and not the claimant's refusal to accept McHugh's job offer, the arbitrator determined that the claimant did not fall into the odd-lot category for PTD. The Commission affirmed and adopted that finding. We also note that, in his report, Grzesik found that, based upon the claimant's vocational profile, he is limited to entry level or unskilled jobs. Grzesik then listed 15 examples of such jobs.

¶ 35 Whether a claimant is permanently and totally disabled is a question of fact to be resolved by the Commission, and its determination will not be disturbed on review unless it is against the manifest weight of the evidence. *Lenhart*, 2015 IL App (3d) 130743WC, ¶ 31. Based upon the record before us, we are unable to conclude that an opposite conclusion from the Commission's finding that the Claimant did not fall into the odd-lot category is readily apparent. Consequently, the Commission's determination that the claimant is not entitled to PTD benefits is not against the manifest weight of the evidence.

¶ 36 Next, the claimant argues that the Commission erred in refusing to award him maintenance benefits. He asserts both that his vocational expert, Grzesik, and McHugh's vocational expert, Kahan, opined that his self-directed job search satisfied the criteria for vocational rehabilitation, and that the search entitled him to maintenance benefits. McHugh argues that, due to his refusal to accept its job offer, the claimant was not entitled to maintenance benefits.

¶ 37 Section 8(a) of the Act (820 ILCS 305/8(a) (West 2014)) authorizes awards for vocational rehabilitation. The section provides that the employer shall pay for "vocational rehabilitation of

the employee, including all maintenance costs and expenses incidental thereto." 820 ILCS 305/8(a)

(West 2014); *Nascote Industries v. Industrial Comm'n*, 353 Ill. App. 3d 1067, 1075 (2004). If the

claimant is not engaged in some type of physical rehabilitation program, formal job training or a

self-directed job search, there is no obligation to provide maintenance. *Greaney v. Industrial*

*Comm'n*, 358 Ill. App. 3d 1002, 1019 (2005). Whether a claimant is entitled to maintenance

benefits is a question of fact to be resolved by the Commission, and its determination of the issue

will not be disturbed on review unless it is against the manifest weight of the evidence. *W.B. Olson,*

*Inc. v. Illinois Worker's Compensation Comm'n*, 2012 IL App (1st) 113129WC, ¶¶ 31, 39.

¶ 38      The arbitrator awarded the claimant 125 4/7 weeks of maintenance benefits for the period

from February 1, 2013, through June 30, 2015, the period during which he was conducting a self-

directed job search. She found that the claimant proved his entitlement to maintenance benefits

and that McHugh's modified job offer "was not suitable or appropriate." The Commission

disagreed and vacated the award of maintenance benefits, finding that the claimant refused

McHugh's offer of accommodated work. The Commission noted that McHugh's job offer states

that "you [the claimant] will only be assigned tasks consistent with Dr. Gryzlo's work restrictions.

If you feel you have been given tasks to perform in excess of the medical modifications, this will

confirm you are not to attempt or perform such tasks." The Commission's decision states that it

"not only gives weight to *** [McHugh's] offer of employment" it found that the claimant "was,

at a minimum, obligated to prove that *** [McHugh's] offer of employment was not genuine."

¶ 39      The claimant argues that McHugh's job offer of October 5, 2012, and the modified job

description received by his attorney on January 7, 2013, exceeded his physical restrictions. He

asserts that he was not obliged to accept a job that he could not safely perform and that exceeded

his physical restrictions. The claimant takes issue with the Commission's determination that McHugh's job offer comported with his physical restrictions, merely because the offer states that "you will only be assigned tasks consistent with Dr. Gryzlo's work restrictions." He also takes issue with the Commission's assertion that "he ran to Dr. Grzylo and obtained a letter that indicated that *** [he] was unable to perform the tasks as outlined [in McHugh's job offer] *** in an obvious effort to avoid a return to accommodated work."

¶ 40    Benefits may be denied to a claimant who refuses to work within his physical restrictions. *Interstate Scaffolding, Inc. v. Illinois Workers' Compensation Comm'n*, 236 Ill. 2d 132, 147 (2010); *City of Granite City v. Industrial Comm'n*, 279 Ill. App. 3d 1087, 1090 (1996). Whether a claimant has refused work within his physical restrictions is a question of fact to be resolved by the Commission, and its determination will not be disturbed on review unless it is against the manifest weight of the evidence. *Otto Baum Company, Inc. v. Illinois Worker's Compensation Comm'n*, 2011 IL App (4th) 100959WC, ¶ 13. However, we will not hesitate to overturn a factual determination made by the Commission when the clearly evident, plain, and indisputable weight of the evidence compels an opposite conclusion. *Dye v. Illinois Workers' Compensation Comm'n,* 2012 IL App (3d) 110907WC, ¶ 10.

¶ 41    McHugh's job offer of October 5, 2012, states, in relevant parts, that: the claimant was offered the position of "Ironworker;" "[t]he assignment is within medically modified abilities described as safe for you to perform by the examining doctor;" "[t]he duration of these modifications and this work offer will follow future changes to medical modifications;" "[y]ou will only be assigned tasks consistent with Dr. Gryzlo's work restrictions; " and "[i]f you feel that you have been given tasks to perform in excess of the medical modifications, you are not to attempt

or perform such tasks." Nowhere in the document does it describe the tasks that the claimant was expected to perform, prompting the claimant's attorney to advise McHugh's workers' compensation insurance carrier by e-mail, on October 10, 2012, that the claimant "will not return to work until we have a detailed job description of what he will be doing." In that same e-mail, the claimant's attorney stated that the claimant "is more than willing to return to work within his restrictions, but is entitled to confirm, through his physician, that the work available is within his restrictions and it is safe for him to return to work." The modified job description that the claimant's counsel received on January 7, 2013, has a job title of "IRONWORKER – (Rodbuster)" with a general job description of a general job of: rigs, unloads, carries, drays, and ties reinforcing steel for concrete placement; directs operators and operates forklifts, man lifts and scissors lifts; and generally perform duties as required to satisfy the overall purpose of the job. The document also includes "Physical Requirements," which include: "[g]ood arm, hand, leg, foot coordination for climbing ladders and scaffolding and walking carrying materials plus climbing up wall rebar to place rebar;" "[m]ust be able to bend over to move rebar, place rebar on centers and tie in-place with tie wire;" and "[m]ust be able to bend over as much as 4-6 hours out of an 8 hour work day." The document also states that the job includes installing rebar "in walls in place" during which a safety belt is secured to the in-place rebar and the worker then lays back on the safety belt with his feet and legs supported on the lower rebar like the rungs of a ladder and that three to four hours out of an eight hour work day could be spent on this type of work.

¶ 42    It is undisputed that the claimant can only work at a medium physical demand level as determined by the claimant's FCE, Dr. Gryzlo, Dr. Aribindi, and Grzesik. According to Grzesik's report, ironwork is "HEAVY in physical demand." He opined that the claimant is unable to

perform the duties of a journeyman ironworker. Dr. Aribindi, McHugh's examining physician, testified that the claimant is restricted from climbing ladders, going up and down stairs, kneeling, or squatting. Dr. Aribindi did not render an opinion as to whether the claimant was physically capable of performing the tasks outlined in McHugh's modified job description. According to Dr. Gryzlo's progress note of January 17, 2013, he was given a copy of the modified job description, which he found "suggests climbing ladders, scaffold, carrying heavy items and climbing up a wall in rebar to place rebar." The note states that the pain the claimant experiences when bending, kneeling, and squatting would be "jeopardized with this modified iron worker position." The note also states that Dr. Gryzlo did not think that the claimant "can do the modified job description." Dr. Gryzlo concluded by stating that the claimant returning to work as an ironworker, "even on a modified level, would not be possible with his restrictions with regards to his knee." The only evidence in the record that even remotely supports the conclusion that the claimant was capable of performing the tasks outlined in McHugh's modified job description is the report and testimony of Kahan, McHugh's vocational expert. Kahan opined that McHugh "offered [the claimant] a medically appropriate modified duty position within his physical demand capacity." The record reflects, however, that: Kahan never met the claimant; he denied ever seeing Dr. Gryzlo's progress note of January 17, 2020; he admitted that he never reviewed the job description for the position that McHugh offered to the claimant; and he admitted that he did not review Dr. Aribindi's deposition testimony. Kahan even conceded that, under the ironworker contract rules, the job offered to the claimant would not be appropriate for, or available to him.

¶ 43    Simply put, there is no competent evidence in the record before us that could even support an inference that the claimant was offered a position within his physical capabilities. The fact that

McHugh's offer of October 5, 2012, states that the claimant would only be assigned tasks consistent with Dr. Gryzlo's work restrictions and that, if he felt that he had been given tasks to perform in excess of the medical modifications, he was not to attempt or perform such tasks, does not change our conclusion in this regard. The general work duties and physical requirements described in McHugh's modified job description exceeded the claimant's physical capabilities and restrictions against climbing ladders and scaffolding, going up and down stairs, kneeling, squatting, carrying heavy items, and climbing up a wall in rebar to place rebar; and McHugh has pointed to nothing within the duties described that fell within the claimant's physical capabilities and restrictions. We conclude, therefore, that the Commission's determination that McHugh offered to accommodate the claimant and provide him with work falling within his physical capabilities and restrictions is against the manifest weight of the evidence.

¶ 44    A claimant's refusal to accept an offer of work that does not fall within his physical capabilities and restrictions is not a basis for denying benefits. It was the Commission's determination that the claimant had refused a job offer within his physical capabilities and restrictions that was its sole articulated rational for vacating the arbitrator's award of 125 4/7 weeks of maintenance benefits for the period from February 1, 2013, through June 30, 2015. Having found that the Commission's determination that McHugh offered to accommodate the claimant and provide him with work falling within his physical capabilities and restrictions is against the manifest weight of the evidence, it follows that we also find that the Commission's refusal to award the claimant maintenance benefits on that basis is against the manifest weight of the evidence.

¶ 45    For the same reason that it vacated the arbitrator's award of maintenance benefits to the claimant, the Commission also reduced the claimant's TTD benefits from the 59 3/7 weeks of

benefits awarded by the arbitrator to 56 4/7 weeks of benefits and vacated the arbitrator's order that McHugh pay $2,000 to Grzesik. Having found that the Commission's reason for denying the claimant maintenance benefits is against the manifest weight of the evidence, we also find that the Commission's reduction of the claimant's TTD benefits and its vacation of the arbitrator's order that McHugh pay $2,000 to Grzesik is against the manifest weight of the evidence.

¶ 46 Other than its contention that the claimant refused its job offer, McHugh has made no other argument in support of the Commission's denial of maintenance benefits, its reduction of the claimant's TTD benefits, or its vacation of the arbitrator's order that McHugh pay $2,000 to Grzesik. Failure to raise an argument in a litigant's brief results in a forfeiture of the issue for purposes of appeal. Ill. S. Ct. Rule 341(h)(7), (8) (eff. May 25, 2018).

¶ 47 Next, the claimant argues that the Commission erred in failing to award penalties pursuant to sections 19(k) and 19(*l*) of the Act and attorney fees pursuant to section 16 of the Act. He argues that McHugh acted unreasonably in failing to pay benefits based upon his refusal of its modified job offer, which the claimant describes as a "sham." He also argues that McHugh acted unreasonably in refusing to supply him with a truck to use while taking the SPE test, which resulted in his inability to complete the truck driving course at MEGA, and in relying upon Dr. Aribindi's opinion that his physical restrictions were the result of a pre-existing arthritic condition. McHugh argues that it acted in reasonable reliance upon both the claimant refusal of its job offer and Dr. Aribindi's opinion that the claimant's physical restrictions were the result of a pre-existing arthritic condition and not his work accident.

¶ 48 Again, the Commission did not directly address the issue of penalties and attorney fees other than to state that they were denied. It is the arbitrator's decision that sets forth the rational

behind the denial of the claimant' request for an award of penalties and attorney fees. Other than the modifications in the arbitrator's decision relating to TTD benefits, maintenance, PPD benefits, and Grzesik's bill, the Commission affirmed and adopted the arbitrator's decision. In denying an award of penalties and attorney fees, the arbitrator found that McHugh had a reasonable basis to deny TTD and maintenance benefits. According to the arbitrator, there existed a "legitimate dispute" as to whether the claimant rejected McHugh's offer of employment with duties within the restrictions imposed by Dr. Gryzlo. She also found that the claimant failed to show what efforts he made to secure the truck necessary for him to complete the SPE test necessary to obtain a CDL, and instead, he quit the MEGA program.

¶ 49    Section 19(k) penalties and section 16 attorney fees are intended to address situations where there is not only a delay in the payment of benefits, but the delay is deliberate or the result of bad faith or improper purpose. *McMahan*, 183 Ill. 2d at 514-15. Penalties and attorney fees are not warranted in circumstances where the employer could have reasonably believed that the claimant was not entitled to benefits. *Avon Products, Inc. v. Industrial Comm'n*, 82 Ill. 2d 297, 302 (1980); *Mobil Oil Corp. v. Industrial Comm'n*, 309 Ill. App. 3d 616, 626 (2000). However, the standard is one of objective reasonableness. *General Refractories v. Industrial Comm'n*, 255 Ill. App. 3d 925, 931 (1994). The question of whether an employer acted reasonably under the circumstances is one of fact to be resolved by the Commission. *Roodhouse Envelope Co. v. Industrial Comm'n*, 276 Ill. App. 3d 576, 579 (1995).

¶ 50    A review of the Commission's decision to deny penalties under section 19(k) of the Act and/or attorney fees under section 16 involves a two-part analysis. First, we must determine whether the Commission's factual finding in support of the denial are contrary to the manifest

weight of the evidence. Second, we must determine whether it would be an abuse of discretion to deny section 19(k) penalties and/or attorney fees under section 16. *McMahan*, 183 Ill. 2d at 516; *Jacobo v. Illinois Workers' Compensation Comm'n*, 2011 IL App (3d) 100807WC, ¶ 25.

¶ 51 The additional compensation authorized by section 19(*l*) is in the nature of a late fee. *McMahan,* 183 Ill. 2d at 515; *Jacobo,* 2011 IL App (3d) 100807WC, ¶ 20. The statute applies whenever the employer or its carrier simply fails, neglects, or refuses to make payment or unreasonably delays payment without good and just cause. *McMahan,* 183 Ill. 2d at 515. If the payment is late for whatever reason, and the employer or its carrier cannot show an adequate justification for the delay, an award of the statutorily specified additional compensation is mandatory. *Id.* Whether the employer had an adequate justification for the delay is a question of fact to be resolved by the Commission, and its determination will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Jacobo,* 2011 IL App (3d) 100807WC, ¶ 20.

¶ 52 As noted earlier, the basis for denying an award of penalties and attorney fees was the finding that a "legitimate dispute" existed on the issue of whether the claimant rejected an offer of employment with duties within the restrictions imposed by Dr. Gryzlo. In order to determine whether that factual finding is supported by the manifest weight of the evidence, it is necessary to examine the evolution of information concerning the claimant's physical capabilities and restrictions. On September 27, 2012, Dr. Gryzlo released the claimant to work at a medium demand level with the only restriction being no lifting in excess of 50 pounds. On October 5, 2012, McHugh conveyed its offer of employment which, as noted earlier, stated that the claimant would only be assigned tasks consistent with Dr. Gryzlo's work restrictions, and that, if he felt that he was given tasks to perform in excess of the medical modifications, he was not to attempt or perform such

tasks. That offer also states that McHugh had reviewed Dr. Gryzlo's September 27, 2012 "information." On October 22, 2012, the claimant had an FCE that determined he was capable of performing medium demand level work with no standing for more than four hours per day, no walking more than four to five hours per day, and only occasional balancing, bending, stooping, climbing stairs, crouching, or squatting. On January 7, 2013, McHugh's modified job description was received by the claimant's attorney, and the claimant took that document to Dr. Gryzlo on January 17, 2013. Dr. Gryzlo issued his progress note on that same day, concluding that the claimant could not "do the modified job description." A copy of that progress note was sent to McHugh's counsel on January 24, 2013. On April 17, 2013, McHugh had the claimant examined by Dr. Aribindi who issued a report in which he opined that the claimant's restrictions were due to an arthritic condition which predated his work accident. According to Dr. Aribindi's report, the pain that the claimant suffers is the result of underlying chronic degenerative-arthritic changes that are not the result of his work injury. Dr. Aribindi found that, although the claimant is not able to perform his regular duties at the very high physical demand level, he is capable of working at a medium demand level. He advised that the claimant should refrain from climbing ladders, kneeling, or squatting activities, and opined that the claimant was in need of no further medical or surgical intervention for the injury he suffered on December 16, 2011. Neither in his report, nor in his subsequent deposition, did Dr. Aribindi render an opinion as to the claimant's ability to perform the duties outlined in McHugh's modified job description.

¶ 53    Based upon the evidence in the record, we believe that the finding that a "legitimate dispute" existed on the issue of whether the claimant rejected an offer of employment with duties within the restrictions imposed by Dr. Gryzlo is against the manifest weight of the evidence.

McHugh may well have reasonably believed when it issued its initial job offer on October 5, 2012, which stated that the claimant would only be assigned tasks consistent with Dr. Gryzlo's restrictions, that it had in fact offered work within the claimant's physical capabilities because as of that date Dr. Gryzlo had released the claimant to work at a medium demand level restricted only to not lifting in excess of 50 pounds. However, once it was in possession of a copy of the report of claimant's October 27, 2012 FCE, a copy of Dr. Gryzlo's progress note of January 17, 2013, and Dr. Aribindi's report of his April 17, 2013 examination, McHugh was on notice that the claimant could not perform the duties outlined in its modified job description. According to the FCE report, the claimant was restricted from standing for more than four hours per day and walking more than four to five hours per day. The report states that he is allowed only occasional balancing, bending, stooping, climbing stairs, crouching, or squatting. Dr. Gryzlo's progress note states that the claimant could not climb ladders or scaffolds, carry heavy items, or climb up a wall in rebar. Dr. Aribindi advised that the claimant should refrain from climbing ladders, kneeling, or squatting. There is no evidence in the record that the claimant was physically capable of performing the duties outlined in the modified job description until Kahan issued his report on July 12, 2015, stating that McHugh had offered the claimant "a medically appropriate modified duty position within his physical demand capacity." However, the credibility of Kahan' s opinion in that regard must be measured against his deposition testimony in which he denied ever seeing Dr. Gryzlo's January 17, 2013 progress note and admitted that he had not reviewed McHugh's modified job description for the position offered to the claimant. There is no competent evidence in the record supporting the conclusion that a "legitimate dispute" existed on the issue of whether the claimant rejected an offer of employment with duties within the restrictions imposed by Dr. Gryzlo.

¶ 54     Although the basis stated in the arbitrator's decision for denying an award of penalties and attorney fees that the Commission adopted finds no support in the record, McHugh argues that, in failing to pay maintenance benefits, it also relied upon the opinion of Dr. Aribindi that the left-knee pain which the claimant suffers is the result of underlying chronic degenerative-arthritic changes and not the result of his work injury. Neither the arbitrator nor the Commission ever addressed the issue of whether McHugh could have reasonably believed, based upon Dr. Aribindi's opinion, that the claimant was not entitled to maintenance benefits. Penalties and attorney fees are not warranted in circumstances where an employer reasonably relied on a medical opinion as the basis for failing to pay benefits. *Avon Products, Inc.*, 82 Ill. 2d at 302; *Mobil Oil Corp*, 309 Ill. App. 3d at 626. The question of whether McHugh acted in reasonable reliance upon Dr. Aribindi's opinion in failing to pay the claimant maintenance benefits is one of fact to be resolved by the Commission. *Roodhouse Envelope Co.*, 276 Ill. App. 3d at 579. As the reasonableness of McHugh's reliance on Dr. Aribindi's opinion underlies the question of whether the claimant should be awarded penalties under sections 19(k) and 19(*l*) of the Act and attorney fees under section 16, we deem it appropriate to vacate the Commission's denial of penalties and attorney fees and remand the matter to the Commission to decide the issue.

¶ 55     Based upon the foregoing analysis, we: 1)  reverse that portion of the circuit court's judgment that confirmed the portions of the Commission's decision vacating the maintenance benefits awarded to the claimant, reducing the claimant's TTD benefits from 59 3/7 weeks of benefits to 56 4/7 weeks of benefits, and vacating the order upon McHugh to pay Grzesik $2,000; 2) vacate that portion of the circuit court's judgment that confirmed the Commission's denial of penalties under sections 19(k) and 19(*l*) of the Act and attorney fees under section 16 of the Act;

3) affirm the circuit court's judgment in all other respects; 4) reverse those portions of the Commission's decision vacating the maintenance benefits awarded to the claimant, reducing the claimant's TTD benefits from 59 3/7 weeks of benefits to 56 4/7 weeks of benefits, and vacating the order upon McHugh to pay Grzesik $2,000; 5) vacate that portion of the Commission's decision denying the claimant penalties under sections 19(k) and 19(*l*) of the Act and attorney fees under section 16 of the Act; and 6) remand this cause to the Commission with directions to: a) award the claimant 59 3/7 weeks TTD benefits for the period of December 19, 2011, through January 31, 2013; b) award the claimant 125 4/7 weeks of maintenance benefits for the period from February 1, 2013, through June 30, 2015; c) order McHugh to pay $2,000 to Thomas Grzesik; and d) conduct a hearing, consistent with the opinions expressed herein, to determine whether the claimant is entitled to penalties under sections 19(k) and 19(*l*) of the Act and attorney fees under section 16 of the Act.

¶ 56    Circuit court judgment affirmed in part, vacated in part and reversed in part.

Commission decision reversed in part and vacated in part.

Cause remanded to the Commission with directions.